The Chief Justice
delivered the opinion of the Court:
The bill charges that on the 30th day of March, 1889, James Waters, being the owner of lot 16, in section 3 of the Barry farm subdivision, except lot numbered 43 and the west half of lot numbered 45 of a subdivision of said original lot 16, with his wife executed a deed to the defendant Williamson, which on its face was in fee for the consideration of five hundred dollars; that it was procured from them by fraud; that both of them were ignorant and unable to read or write; that the grantor Waters was in prison charged with having received stolen goods; that he was desirous of obtaining bail and also of procuring a lawyer to defend him; that two hundred dollars of said sum was to be Williamson’s fee and three hundred dollars was to be paid by him in procuring bail; that both Waters and his wife agreed to execute a deed of trust to secure said sum of five hundred dollars; that no money was paid by Williamson, and that in fact Williamson executed the paper filed as an exhibit to the bill of complaint which is as follows: “ I hereby agree to reconvey to James Waters and his wife, the property conveyed to me by them in a deed, dated March 30th, 1889, upon the payment to me by them of five hundred dollars, said sum being my fee in the case of U. S. vs. Waters.
(Signed) W. Preston Williamson.”
But the complainants aver that this paper was not read to them; that Waters had previously conveyed two lots out of said lot 16, and was in ignorance of the fact that said lots were not excepted in the conveyance to Williamson; that Williamson failed to procure the bail; that Waters was convicted and sentenced to the Albany Penitentiary in *26 one of the cases in which Williamson .was employed to defend him and that an appeal was taken to the General Term; that convictions in four cases were entered against the defendant in the Police Court from which appeals were taken to the Criminal Court and that Williamson so-neglected the business that Waters was obliged to employ other counsel. That on the 9th of February, 1889, Waters and his wife filed a bill to set aside and declare null and void said conveyance of March 30th, 1889, which bill for want of a replication to the defendant’s answer was dismissed on motion of Williamson on the 9th day of October, 1889. The bill further charges.that Williamson, with the intent to" defraud Waters, on the 9th day of September, 1889, made k promissory note for five hundred dollars, payable in ninety days, with interest at six per cent., payable to the order of the defendant William Mayse, and on the same day executed to William A. Kimmell, as trustee, a deed of trust on said original lot 16 in Barry’s farm subdivision, and providing upon default in the payment of said note or any installment of interest thereon, the lot should be sold and a deed of trust made in fee simple to the purchaser and a commission of five per cent, allowed the trustee, and after such allowance, and also costs and charges, said money was next to. be applied to the payment of said note or the balance thereof, whether due or not; and the ■ remainder, if any, to be paid to the said Williamson, thus perpetuating and continuing the original fraud, design and purpose on Williamson’s part to secure and retain sáid lots, the ground and improvements being worth about two thousand to twenty-five hundred dollars. The bill further charges that the defendant Kimmell, at the request of the defendant Mayse, on the 14th day of February, 1890, advertised the lot for sale, the note given by Williamson not having been paid; that Williamson claims that he had offered to reconvey the premises to Waters upon payment of the sum of five hundred and fifty dollars and tendered a conveyance to Waters accordingly, and the complainants further say that the only *27 amount which Williamson could to any extent claim or demand was the sum of two hundred dollars, which sum, although exorbitant and unjust, they are ready and willing to-pay. The complainants pray for a cancellation of the deed of March 30th, 1889, and the deed of trust of September 9, 1890, and that Williamson be ordered to reconvey the premises to Waters, and that Mayse, Kimmell and Stickney be enjoined and prohibited from making a sale of the property under the advertisement of February 15th, 1890, and the lots of ground conveyed to Allen and Hendricks be declared free from the conveyance made to Williamson and the defendants Mayse and Kimmell, and that both the said instruments be declared null and void as respects the property conveyed to said Allen and Hendricks.
The answer of Williamson denies the fraud charged in the bill and avers that the real transaction is shown by exhibit number 1 of the complainants attached to the bill, namely, a conveyance by him to Waters on payment of five hundred dollars, which was the amount Waters agreed to pay Williamson for defending him in certain criminal prosecutions against Waters in the Police Court and in the Criminal Court, and that it was no part of the consideration that he was to procure bail for Waters; that subsequently to the execution of the deed, Waters executed a further agreement to pay five hundred dollars, and if Williamson succeeded in acquitting Waters of the several criminal charges-against him, he was to receive the further sum of $3,000. Williamson avers that he performed his duty by appearing for Waters in several cases in the Police Court, and in three cases in the Criminal Court, expending $50 in securing assistant counsel, expenses, &c. He says that he did not neglect the business of Waters, but attended to it until superseded by other counsel employed by Waters. He admits-the statements of the bill as to the making of the notes and trust, and the obtaining of the sum of $550, except, he says, that it occurred on the 10th day of October, 1889, instead of the 10th day of September, as averred in the bill. He *28 says, that he made the loan only for the purpose of raising his fee and the expenses that he had incurred on behalf of Waters; avers that after-executing the deed of trust he executed a deed in proper form conveying lot io back to Waters, subject to the trust of Kimmell, and tendered a deed to Waters, and also to William A. Cook, his counsel, which they both refused to accept. He denies that Mayse had any knowledge of the transaction between Waters and himself or knew of the legal proceedings between them previously to the execution of the deed of trust. He says that when he tendered a reconveyance to Waters, no money was demanded because none was then due to him, and that before he executed the deed of trust he demanded the payment of five hundred and fifty dollars.
Mayse answers and says: he had no knowledge of the matters between Waters and Williamson; that Williamson was accustomed to keep an account with him and had often five hundred dollars at his banking place subject to his check; that he knew Williamson was good for the amount of the trust, and hence, made no examinatioii of the title or inquiry as to who was in possession of the premises at the time of the loan. Williamson in his answer suggests' that Mrs. Waters and Alexander M. Allen and Mary Hendricks are improperly joined as complainants.
The first inquiry is, whether Waters and wife understood what the real character of the transaction was at the time of the conveyance by Waters to Williamson, and was the deed in accordance with the understanding of the parties? The principal testimony upon this point is that of the parties, Waters and his wife upon the one side, and Williamson upon the other, with the exception of the testimony of Dorian, who took the acknowledgment of the deed. He testifies that at the solicitation of Williamson, on the day the deed was executed, 30th of March, 1889, he took the deed and went with Williamson to Waters, who was then in prison, and read the deed to Waters. Waters complained that the deed was not what he had expected, or had been agreed; that *29 it was an absolute deed conveying the property to Williamson, and he had expected it to be a deed of trust to secure the payment of five hundred dollars, and that he was to have a reasonable time to pay the five hundred dollars to Williamson, and he did not want to sign it in that form, but Williamson explained it to him and said it would be all right, and he signed it. Then Dorian took the deed to Waters’ wife and she made the 'same objection, that it was not in proper form; that it was an absolute conveyance instead of a deed' of trust to secure the payment; and thereupon he suggested that it would be proper for Williamson to execute a paper to the effect that the deed was subject to be defeated on the payment of five hundred dollars, and on such payment the property would be reconveyed to Waters. Thereupon Williamson did write and execute the paper according to which, upon the payment of five hundred dollars, Williamson agreed to reconvey the property to Waters.
The complainants, Waters and his wife, testified, that the deed was not what they or either of them intended to make. Waters testified that it was not read to him, and Mrs. Waters testified that it was not read to her. Mrs. Waters denies that the paper executed by Williamson and delivered to her, was read to her at that time. She denies that there was a statement made between them as to the deed being absolute, or that it was for that reason that the paper was executed by Williamson, but says, that she understood that the character of the transaction was that Williamson was to have two hundred dollars out pi five hundred dollars as his fee in the cases in which he was employed, and that three hundred dollars was for the purpose of enabling him to get bail for Waters so that he might be discharged from prison pending a trial of his cases. Waters testifies that he had the same understanding. Williamson denies that anything was said at the time about three hundred dollars being for the purpose of enabling him to obtain bail, and that two hundred dollars of the five hundred should be his fee, but he says the agreement was, that five hundred *30 dollars was the real fee which he was to have for his services which he agreed to perforin for Waters at that time; and that the object in executing the deed was to secure the payment of $500 to him. Dorian says that he heard nothing at that time either from Mrs. Waters or Mr. Waters about a portion of this sum being to enable Williamson to obtain bail, or that his fee was not to exceed two hundred dollars. He understood from the conversation between both of the parties and Williamson, that it was to secure the payment of a fee of five hundred dollars to Williamson. The evidence establishes by a preponderance, we think, that Waters and wife understood the transaction. The deed executed by Waters and wife and the agreement of Williamson having been executed at the same time and relating to the same transaction, must be considered together, and when so considered in equity as between the parties the deed must be held as a mortgage, and this construction is binding upon Mayse, unless under the circumstances of the case he is entitled to be regarded as an innocent purchaser. We think he is only entitled to take by the deed of trust whatever Williamson could convey to him, and maintain his proper relations in equity with Waters; that he may be regarded .as taking the place of Williamson and succeeding to all the rights that Williamson possibly had under the deed from Waters. Mayse testified that he did not loan this money to Williamson on'the security of the deed of trust, but upon Williamson’s credit; that he knew Williamson, who always had in his bank, subject to check, at least $550; that he was good for that sum of money, and for that reason he did not take any steps to have the title examined. He did not make any inquiries as to who was in possession of the premises, or take any other steps to ascertain anything about the security which would be afforded by the deed of trust to Kimmell. It appears in evidence that the house had been ■occupied by Mr. and Mrs. Waters previous to his imprisonment, and that his wife continued to live there and was in possession at the time that the deed of trust was given. We *31 think under such circumstances Mr. Mayse is not entitled to be regarded as an innocent purchaser, and that he, therefore, took nothing by the deed of trust except that which Williamson might properly give and maintain his proper •equitable relations with Waters. Williamson exceeded his power and did that which he had no right to do as far as Waters was concerned, by executing a deed of trust to secure the payment of $550, being $50 more than his interest in the property by virtue of the deed from Waters. Mayse, therefore, acquired simply a right to enforce a lien upon the property to the extent of $500.
The decree of the special term is reversed, the deed from' Waters to Williamson held to be a mortgage to secure the payment of $500 within a reasonable time; that Mayse by virtue of the deed of trust and sale and conveyance of the trustee to him be held to have acquired the rights of Williamson as construed by this court and nothing more. Ordered, that Waters pay to Mayse the sum of $500 within ninety days, and upon such payment Mayse shall release and convey the premises to Waters; that the costs of this case shall be paid in equal proportions by Williamson and Waters. If default be made by Waters in making such payment, then a trustee be appointed by the court to make sale of the premises, excepting the two lots previously sold by Waters as averred' in the bill, and that distribution of the proceeds of sale be made according to the rights of the respective parties as settled by this decree.
The cause is remanded to the special term for execution.